STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

STATE OF SOUTH CAROLINA,

vs.

JOHN J. MELLO,

         Defendant.

IN THE COURT OF GENERAL SESSION
THIRTEENTH JUDICIAL CIRCUIT

CASE NUMBER: 2022-GS-23-02160

**ORDER**
**(AMENDED)**

This matter was before the court on the Defendant's motion asking (1) that the court make a pre-trial determination that the victim in this matter cannot be considered a legal custodian as contemplated in S.C. Code § 16-17-495(A)(1) and then, (2) to quash the indictment. The parties appeared before the court on June 10, 2022. Present at the hearing were Marcelo Torricos, attorney of record for the Defendant and Ryan Holloway, Assistant Solicitor, on behalf of the State.

Based upon the Defendant's written motion, the State's written response, oral arguments, a review of all pertinent files, and applicable law, this Court makes the following findings of fact and conclusions of law:

1. The Defendant is the biological father of minor child, A.G.M.

2. The Defendant was charged with Custodial Interference (S.C. Code § 16-17-495) on October 21, 2021, by the Greenville County Sherriff's Office.

3. S.C. Code § 16-17-495(A)(1) states that, "[w]hen a court of competent jurisdiction in this State or another state has awarded custody of a child under the age of sixteen years or when custody of a child under the age of sixteen years is established pursuant to Section 63-17-20(B), it is unlawful for a person with the intent to violate the court order



Ex. A

or Section 63-17-20(B) to take or transport, or cause to be taken or transported, the child *from the legal custodian* for the purpose of concealing the child, or circumventing or avoiding the custody order or statute." (emphasis added).

4. The Defendant was granted sole custody of A.G. M. by the Honorable Thomas Hodges of the Greenville County Family Court by way of a Final Order on February 4, 2019 [1] (2017-DR-23-3369).

5. The Defendant's ex-girlfriend and biological mother of A.G.M., Christina Parcell, now deceased, was granted visitation rights by the same order.

6. According to the State, the Defendant violated S.C. Code § 16-17-495 when the Defendant departed from the United States to Italy with A.M. in October of 2020 and failed to return the child to Mrs. Parcell, for her court ordered visitation.

7. The Defendant left the United States with A.G.M. because he was the minor child's sole custodian, and thus cannot have taken the child in violation of S.C. Code § 16-17-495(A)(1).

8. At the time this alleged offense occurred, there was no order modifying or altering Mr. Mello's sole custodian status.

I. *The court may settle pretrial questions of law. As such, the court finds that Ms. Parcell does not fit the legal definition of "legal custodian" as contemplated in S.C. Code § 16-17-495(A)(1).*

9. First, the Defendant moved this court for a pretrial finding that Ms. Parcell could not legally fit the definition of "legal custodian" as contemplated in S.C. Code § 16-17-495(A)(1).

10. The State raised the argument that the determination of what is and what is not a "legal custodian" per S.C. Code § 16-17-495(A)(1) is a question of fact for a jury to

---

[1] The order was signed by Judge Hodges on February 1, 2019 and clocked February 4, 2019.

determine. The court respectfully disagrees and finds that it is a question of law, ripe for pre-trial determination.

11. In its February 4, 2019 order, the Greenville County Family Court clearly and unambiguously granted and awarded Mr. Mello sole custodial rights as to A.G.M. and only granted Ms. Parcell noncustodial visitation rights.

12. The State's argument that a party to a custody order granting visitation rights becomes a legal custodian pursuant to S.C. Code § 16-17-495(A)(1) is inconsistent with South Carolina law, specifically Title 63 of the S.C. Code.

13. The State has failed to provide this court with any statute or case/holding that supports their argument that a parent with only visitation rights can, under these facts and circumstances, be considered a "legal custodian."

14. Our State recognizes three forms of custody: sole, split, and joint. Split and joint custody were not mentioned in the Defendant's February 4, 2019 Order and are therefore not relevant. Sole custody, however, was given to Mr. Mello and the General Assembly has defined "sole custody" to mean *"a person...who has...the rights and responsibilities for major decisions concerning the child..."* S.C. Code § 63-15-210. The operative word(s) in this statute would be "a person", as in one person, not two, who has the right and responsibility to make decisions on behalf of a child.

15. Additionally, "Sole custody describes the most common form of custody. One parent (the *custodial* parent) is awarded legal and physical custody of the child and the other parent (the *noncustodial* parent) has visitation with the child, typically on alternating weekends, portions of holidays, and a few weeks in the summer." *5 Marital Litigation*



*in South Carolina § 10-D* (emphasis added). Therefore, the court finds that any argument or insinuation that the Ms. Parcell had any form of custodial rights is inconsistent with our state law.

16. Subsequently, the State argued that the General Assembly's definitions of terms such as custody or custodian in Title 63 of the S.C. Code as cited above are inapplicable to Title 16 of the S.C. Code and that the referencing of definitions from title to title is not permissible.

17. I respectfully disagree with the generalized premise put forth by the State that relevant definitions found in one title, such as Title 63 of the S.C. Code, are inapplicable to another title, such as Title 16 of the S.C. Code. *Sonoco Prods. Co. v. S.C. Dep't of Revenue*, 378 S.C. 385, 391, 662 S.E.2d 599, 602 (2008) (Holding that when a term is not defined in a statute, the court may glean an appropriate definition by reviewing secondary sources, our state statutes, and our state appellate decisions which deal with the concept.)

18. Our General Assembly has statutorily declared that the Family Courts of our State maintain exclusive jurisdiction to determine the custody of a minor child [2]. As such, this court is compelled to rule consistently, and define terms consistently, with the Greenville County Family Court.

19. During oral arguments, this court challenged the State to identify where one would find more accurate or relevant definitions pertinent to the determination of custodial rights if not in Title 63. In response, the State argued that the court must apply the plain and ordinary meaning of the term "legal custodian" in lieu of any definitions found in other parts of our law. I disagree.

---

[2] S.C. Code § 63-3-530

20. Even if that were true, after applying the plain and ordinary meaning of "legal custodian," the court still concludes that Ms. Parcell does not fit that definition as the plain and ordinary meaning of "legal custodian" would be the parent that was awarded custody by a family court, which in this case, again, is solely Mr. Mello.

21. The one area where the State and the Defense agree is that because the court is being asked to interpret a statute, its goal must be to ascertain the legislative intent. I also agree.

22. The State argued that the legislature could not have intended this statute to be enforced by law enforcement on behalf of legal custodians exclusively, as it would leave noncustodial parents with visitations rights stranded and without protection or recourse in situations such as these. However, the legislature has not left noncustodial parents with visitations rights stranded and without a remedy in situations such as these because noncustodial visiting parents such as Ms. Parcell do have a remedy: contempt.

23. On the other hand, the Defendant's argument as to the legislative intent behind this statute is more convincing. The Defendant argued that violating a visitation order or a child support order or any other order from the family court is certainly problematic, however, it is far more egregious or flagrant to violate someone's custodial rights. Therefore, it makes sense that the legislature formulated criminal liability pursuant to S.C. Code § 16-17-495 to deter violations of one's custodial rights versus allowing actions for contempt, through the Family Courts, to deter and punish violations of other rights, such as visitation rights.

24. For the reasons set forth above, the court holds that Ms. Parcell is exempt from the definition of "legal custodian" as contemplated in S.C. Code § 16-17-495(A)(1).

II. *(1) The indictment was not deficient and (2) a trial court generally has no power to dismiss a properly drawn indictment issued by a properly constituted grand jury before trial unless a statute grants that power to the court.*

25. The Defendant then moved to quash the indictment on two grounds: (1) deficiency in the indictment and (2) that because Ms. Parcell was non-custodial parent, the State had lacked the probable cause necessary to indict.

26. First, the indictment was not deficient. After a review of the record and argument, the court finds that the language in the indictment is plainly clear and understandable as to the nature of the crime for which the Defendant is charged and what judgment this court is to pronounce. *See State v. Lewis*, 863 S.E.2d 1, 8-9 (S.C. 2021); *State v. Means*, 626 S.E.2d 348, 353-54 (S.C. 2006); *State v. Shoemaker, 275 S.E.2d 878 (S.C. 1981)*; *State v. Guthrie*, 572 S.E.2d 309, 312 (S.C. Ct. App. 2002). *See also State v. Gentry*, 610 S.E.2d 494, 500 (S.C. 2005) ([W]hether the indictment could be more definite or certain is irrelevant). The court finds that the indictment allows the Defendant to decide whether or not to plead guilty or stand trial and puts the Defendant on notice as to what elements the State must meet.

27. Second, while the court is inclined to legally determine that Ms. Parcell does not meet the element or definition of "legal custodian" pre-trial, I do not believe I have the authority to quash this indictment. "[A] trial court generally has no power to dismiss a properly drawn indictment issued by a properly constituted grand jury before trial unless a statute grants that power to the court. The prosecutor may, of course, request the dismissal of an indictment or charge." *State v. Needs*, 333 S.C. 134, 146, 508 S.E.2d 857, 863 (1998), *modified on other grounds, State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004).

28. A statute may authorize the court, either of its own motion or on the application of the prosecuting officer, to order an indictment or prosecution dismissed. But in the absence of such a statute, a court has no power . . . to dismiss a criminal prosecution except at the instance of the prosecutor. *State v. Ridge*, 269 S.C. 61, 65, 236 S.E.2d 401, 402 (1977) (quoting *Ex parte State*, 263 S.C. 363, 366, 210 S.E.2d 600, 601 (1974). The Defendant has failed to identify what statute, if any, would provide this court the authority to quash this indictment.

29. For these reasons, the Defendant's motions to quash are denied.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:**

1. Ms. Parcell does not meet the definition or is otherwise exempt from the definition of "legal custodian" as contemplated in S.C. Code § 16-17-495(A)(1); and

2. The Defendant's motions to quash the indictment are denied.

**IT IS SO ORDERED.**

The Honorable Alex Kinlaw
Thirteenth Judicial Circuit

Greenville, South Carolina
_____, 2022